## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

POPULUS GROUP, LLC
3001 West Big Beaver Rd., Ste. 400,
Troy, MI  48084,

        *Plaintiff*,

        v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, 20 Massachusetts
Avenue NW, Washington DC 20529; and
KENNETH T. CUCCINELLI, Acting Director of
U.S. Citizenship and Immigration Services,[1] in his
official capacity, 20 Massachusetts Avenue NW,
Washington DC 20529,

        *Defendants*.

Civil Action No. 19-0027 (KBJ)

## AMENDED COMPLAINT

### Introduction

1.      Plaintiff Populus Group, LLC ("Populus"), a high-end staffing firm specializing in placement of educated professionals, challenges the denial of three I-129 petitions it filed to grant nonimmigrant H-1B specialty-worker status to employees Jay Sharma, Pravallika Kondeti, and Mounika Siriguppi ("Populus employees").

2.      Populus challenges these three denials specifically, but also broadly challenges the unlawful legislative rule which led to these and other denials which threaten Populus' and the greater staffing industry's business model.

Exhibit 1

---

[1] Pursuant to Rule 26(d) of the Federal Rules of Civil Procedure, Mr. Cuccinelli is automatically substituted for his predecessor, L. Francis Cissna.

3.      On February 22, 2018, Defendant United States Citizenship and Immigration Services ("USCIS") unveiled a new legislative rule in the form of a policy memorandum which imposed new evidentiary burdens on staffing companies using the H-1B visa program. Policy Memorandum PM-602-0157, U.S. Citizenship & Immigration Servs., *Contracts and Itineraries Requirements for H-1B Petitions Involving Third-Party Worksites* (Feb. 22, 2018) (Ex. A) [hereinafter Itineraries memo].[2]

4.      This legislative rule was illegally adopted without going through notice and comment required of proper rulemaking.  Without the benefit of input from the staffing industry and other members of the public, the memo unsurprisingly resulted in a substantively flawed policy imposing new evidentiary burdens which did not reflect reality—requiring documents which are cumulative at best, and nonsensical or even nonexistent at worst.

5.      The legislative rule also illegally expanded Defendant USCIS' role beyond its statutory mandate by deputizing the agency with the task of patrolling against "speculative employment" when Congress made clear that this was the U.S. Department of Labor's statutory concern.  Specifically, the Itineraries memo imposed a new evidentiary burden on staffing-company H-1B petitioners to provide proof of employee project assignments years in advance, based on a vestigial regulation that the agency itself admitted was outdated an inapt back in 1998.

6.      After this new legislative rule took effect, Populus filed H-1B petitions on behalf of the Populus employees—all U.S. master's graduates with degrees in Information Technology and Engineering fields—so they could use their specialty degrees on specific projects for end clients of Populus.

---

[2] The Policy Memorandum itself is undated, but Defendant USCIS' website confirms it was issued on February 22, 2018.

7.      The petitions were all selected in the H-1B lottery for Fiscal Year 2019 and receipted by Defendant USCIS on April 12, 2018 (WAC1814452032, WAC1814650517, and WAC1814953045).

8.      In support of each petition, Populus provided record evidence in the form of signed employment agreements and specific letters from each end-client showing under the governing "preponderance of the evidence" standard that each of the Populus employees would have an employer-employee relationship with Populus and would be assigned to specific projects requiring their specialty education.

9.      Despite this sufficient, on-point, and uncontroverted record evidence as to who was employing the Populus employees and the specialty work they would be performing, Defendant USCIS denied each petition in November 2018 and again on July 12, 2019.  (*See* Ex. B (2018 denials); Ex. C (2019 denials).)

10.     Each petition was denied on the same grounds: (1) that Populus did not show that it would have an "employer-employee" relationship with the Populus employees and (2) that Populus failed to show that the Populus employees would be "perform[ing] services in a specialty occupation" for the three-year requested H-1B duration.  The second ground for denial was a result of Defendant USCIS applying the illegal Itineraries memo.

11.     In denying Populus' H-1B petitions, Defendants violated the Administrative Procedure Act in multiple ways: (1) by arbitrarily and capriciously ignoring or misinterpreting critical evidence in the record that should have been found sufficient under the governing "preponderance of the evidence" standard; (2) by applying a legislative rule that was illegally adopted without proper notice and comment; and (3) by going "in excess of statutory jurisdiction"

3

in assuming the U.S. Department of Labor's role.  Accordingly, the Court should vacate the denials, order Defendants to approve all three H-1B petitions, and invalidate the Itineraries memo.

## Jurisdiction and Venue

12.     This case arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as a civil action arising under the laws of the United States.  This Court also has authority to grant declaratory relief under 28 U.S.C. §§ 2201-02 and injunctive relief under 5 U.S.C. § 702.  The United States has waived sovereign immunity under 5 U.S.C. § 702.

13.     Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1)(A) because this is a civil action in which the Defendants are an agency of the United States and an officer of the United States, acting in his official capacity, and they reside in this District.

## Parties

14.     Plaintiff Populus Group, LLC ("Populus") is a private, limited liability company headquartered in Troy, Michigan.

15.     Defendant U.S. Citizenship and Immigration Services ("USCIS") is a component of the U.S. Department of Homeland Security ("DHS"), 6 U.S.C. § 271, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). USCIS is responsible for the adjudication of immigration benefits applications, including H-1B nonimmigrant visa petitions, and denied Populus' H-1B petitions.  The California Service Center ("CSC") is a USCIS office that adjudicates petitions and applications for immigration benefits.

16.     Defendant Kenneth T. Cuccinelli is the Acting Director of USCIS. In this role, he oversees the adjudication of immigration benefits and establishes and implements governing

4

policies. He has ultimate responsibility for the adjudication of Populus' petitions and is sued in his official capacity.

## Legal Framework

### The H-1B Category and Annual "Cap"

17.     Congress created the H-1B category for U.S. employers to hire and employ foreign nationals who will work in a "specialty occupation."  8 U.S.C. § 1101(a)(15)(H)(i)(b).

18.     To seek H-1B classification for a particular employee, the employer must first "sponsor" that worker by filing an H-1B petition with USCIS on Form I-129. 8 C.F.R. § 214.2(h)(2)(i)(A).

19.     An H-1B petition can be approved for up to three years at a time.  *Id*. § 214.2(h)(9)(iii)(A)(1).

20.     There is an annual numerical "cap" of 65,000 new H-1Bs for each fiscal year beginning on October 1.  8 U.S.C. § 1184(g)(1)(A).  The first 20,000 petitions filed on behalf of beneficiaries with U.S. master's degrees or higher are exempt, making the cap essentially 85,000. *Id*. § 1184(g)(5)(C).

21.     If more than 85,000 cap-subject[3] petitions are received within the first five business days of the petition acceptance window in early April, then there is a random lottery to determine which petitions will be accepted for adjudication.  8 C.F.R. § 214.2(h)(8)(ii)(B).  Petitions not selected are returned to employers.

22.     For last Fiscal Year 2019 (when the Populus petitions were filed), USCIS received 190,098 petitions for 85,000 slots.  *See* USCIS Completes the H-1B Cap Random Selection

---

[3] There is an H-1B cap exemption for certain categories of employers not relevant here.  *See* 8 U.S.C. § 1184(g)(5)(A)-(B).

Process,  https://www.uscis.gov/news/alerts/uscis-completes-h-1b-cap-random-selection-process-fy-2019 (last visited Aug. 9, 2019).

23.     For current Fiscal Year 2020, USCIS received 201,011 H-1B petitions for 85,000 slots.  *See* USCIS Completes the H-1B Cap Random Selection Process for FY 2020 and Reaches the Advanced Degree Exemption Cap, https://www.uscis.gov/news/alerts/uscis-completes-h-1b-cap-random-selection-process-fy-2020-and-reaches-advanced-degree-exemption-cap (last visited Aug. 15, 2019).

24.     Given these uncertain odds, H-1B employers and employees rightly place great value on being selected in the lottery and having their petitions fairly adjudicated in accordance with the law.

<u>"Employer-Employee" Relationship</u>

25.     Under agency regulations, only a "United States employer" may file an H-1B petition.  8 C.F.R. § 214.2(h)(2)(i)(A).

26.     The term "United States employer," in turn, is defined in relevant part as "a person, firm, corporation, contractor, or other association, or organization in the United States which . . . [h]as an employer-employee relationship with respect to employees under [the H-1B regulations], as indicated by the fact that it may hire, pay, fire, supervise, or otherwise control the work of any such employee . . . ."  *Id.* § 214.2(h)(4)(ii).

27.     Over the past decade, Defendant USCIS has repeatedly sought to clarify what it means to have this required "employer-employee" relationship.

28.     In 2010, USCIS released a memorandum to remedy the purported "lack of guidance clearly defining what constitutes a valid employer-employee relationship as required by 8 C.F.R. 214.2(h)(4)(ii), in particular, with . . . beneficiaries placed at third-party worksites."  Memorandum

3699995

from Donald Neufeld, Assoc. Dir. Serv. Ctr. Opers., U.S. Citizenship & Immigration Servs., to Serv. Ctr. Dirs. et al., *Determining Employer-Employee Relationship for Adjudication of H-1B Petitions, Including Third-Party Site Placements* 2 (Jan. 8, 2010) [hereinafter Neufeld memo] (Ex. D).

29.     The Neufeld memo did not go through the formal notice-and-comment rulemaking procedure provided in Section 553 of the APA.

30.     The Neufeld memo made clear the agency's policy that the "employer-employee relationship" is the same as the "conventional master-servant relationship as understood by common-law agency doctrine."  *Id*. at 3 (quoting *Nationwide Mut. Ins. Co. v. Darden* 503 U.S. 318, 322-23 (1992)).  Under this test, the petitioning employer "must be able to establish that it has the right to control over when, where and how the beneficiary performs the job," even if the employer does not exercise actual control.  *Id*. & n.6.

31.     Under the Neufeld memo, Defendant USCIS is to consider a number of listed factors in determining whether the employer-employee relationship exists "with no one factor being decisive."  *Id*. at 3-4.  The eleven factors include:

(1)  Does the petitioner supervise the beneficiary and is such supervision off-site or on-site?
(2)  If the supervision is off-site, how does the petitioner maintain such supervision, *i.e.* weekly calls, reporting back to main office routinely, or site visits by the petitioner?
(3)  Does the petitioner have the right to control the work of the beneficiary on a day-to-day basis if such control is required?
(4)  Does the petitioner provide the tools or instrumentalities needed for the beneficiary to perform the duties of employment?
(5)  Does the petitioner hire, pay, and have the ability to fire the beneficiary?
(6)  Does the petitioner evaluate the work-product of the beneficiary, i.e. progress/performance reviews?
(7)  Does the petitioner claim the beneficiary for tax purposes?
(8)  Does the petitioner provide the beneficiary any type of employee benefits?

(9)  Does the beneficiary use proprietary information of the petitioner in order to perform the duties of employment?

(10) Does the beneficiary produce an end-product that is directly linked to the petitioner's line of business?

(11) Does the petitioner have the ability to control the manner and means in which the work product of the beneficiary is accomplished?

*Id*. at 3-4.

32.     The Neufeld memo instructs USCIS adjudicators that the test is "flexible" and that "[t]he petitioner will have met the relationship test, if, <u>in the totality of the circumstances</u>, a petitioner is able to present evidence to establish its right to control the beneficiary's employment" and "that the right to control the beneficiary's work will continue to exist throughout the duration of the beneficiary's employment term with the petitioner."  *Id*. at 4 (emphasis added).

33.     These portions of the Neufeld memo have been incorporated into Defendant USCIS' Adjudicator's Field Manual ("AFM").  *See* Adjudicator's Field Man. Ch. 31.3(g)(16)(A) [hereinafter AFM] (Ex. E (collected, cited provisions of the AFM)).  The AFM is binding policy on all USCIS employees.  *Id*. Ch. 3.4(b) (Ex. E).

34.     While the Neufeld memo provides examples of the types of documents that can demonstrate the "employer-employee relationship," Neufeld memo at 7-9, Defendant USCIS subsequently clarified to the public on its website that:

> The documents listed in the [Neufeld] memorandum are only examples of evidence that may establish the petitioner's right to control the beneficiary's employment.  Unless a document is required by the regulations, i.e. an itinerary, you may provide similarly probative documents.  You may submit a combination of any documents that sufficiently establish that the required relationship between you and the beneficiary exists.  You should explain how the documents you are providing establish the relationship.  Adjudicators will review and weigh all the evidence submitted to determine whether a qualifying employer-employee relationship has been established.

USCIS, *Questions and Answers: USCIS Issues Guidance Memorandum on Establishing the*

*"Employer-Employee Relationship" in H-1B Petitions*, Q4/A4, https://www.uscis.gov/news/questions-answers-uscis-issues-guidance-memorandum-establishing-employee-employer-relationship-h-1b-petitions (last visited Aug. 12, 2019) (Ex. F).

### "Specialty Occupation"

35.   For an H-1B petition to be approved, the petitioner must also demonstrate that the position offered to the beneficiary is a "specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b).

36.   "Specialty occupation" is defined by statute as "an occupation that requires . . . theoretical and practical application of a body of highly specialized knowledge, and . . . attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." *Id*. § 1184(i)(1).

37.   Engineering and IT positions like those at issue are routinely found by Defendant USCIS to qualify as a "specialty occupation." As stated verbatim in each denial decision:

> Applying this standard [for "specialty occupation"], USCIS regularly approves H-1B petitions for qualified nonimmigrants who are to be employed as engineers, computer scientists, . . . and other such occupations. These professions, for which petitioners have regularly been able to establish a minimum entry requirement in the United States of a bachelor's or higher degree in a specific specialty or its equivalent directly related to the duties and responsibilities of the particular position, fairly represent the types of specialty occupations that Congress contemplated when it created the H-1B visa category.

*In re Populus Group,* LLC, WAC1814452032 at 5-6 (July 12, 2019) (Sharma denial) (Ex. C); *In re Populus Group,* LLC, WAC1814650517 at 6 (July 12, 2019) (Kondeti denial) (Ex. C); *In re Populus Group,* LLC, WAC1814953045 at 5-6 (July 12, 2019) (Siriguppi denial) (Ex. C).

38.   On February 22, 2018, Defendant USCIS issued the Itineraries memo seeking to bridge the concepts of "employer-employee relationship" with "specialty occupation" when a petitioner seeks to place an H-1B employee at a third-party worksite. *See* Itineraries memo (Ex.

A).  The Itineraries memo is "intended to be read together with the Employer-Employee memo [the Neufeld memo] and as a complement to that policy."  *Id*. at 2.

39.     The Itineraries memo did not go through the formal notice-and-comment rulemaking procedure provided in Section 553 of the APA.

40.     As a "[m]emorandum . . . from Headquarters specifically designated as policy (bearing the 'P' suffix in the reference file number)" the Itineraries memo is a "[p]olicy material" . . . binding on all USCIS officers" and which "must be adhered to unless and until revised, rescinded, or superseded . . . ."  AFM Ch. 3.4(a) (Ex. E).

41.     The Itineraries memo requires that "[w]hen a beneficiary will be placed at one or more third-party worksites, the petitioner must demonstrate that it has specific and non-speculative qualifying assignments in a specialty occupation for the beneficiary for the entire time requested on the petition."  Itineraries memo at 4.

42.     A major legal justification for the Itineraries memo is a regulation found at 8 C.F.R. § 214.2(h)(2)(i)(B).  That regulation purports to require H-1B petitioners to provide an "itinerary" with the "dates and locations of the services" the H-1B beneficiary will perform whenever they will be performed "in more than one location."   8 C.F.R. § 214.2(h)(2)(i)(B).

43.     In 1998, legacy Immigration and Naturalization Service[4] ("INS") admitted this regulation was outdated and targeted it for rescission.  Petitioning Requirements for the H Nonimmigrant Classification, 63 Fed. Reg. 30,419, 30,419 (June 4, 1998).  Specifically, it was "promulgated primarily to address certain practices in the entertainment industry, which, prior to

---

[4] On March 1, 2003, the Immigration and Naturalization Service was reconstituted as the Bureau of Immigration and Customs Enforcement and the Bureau of Citizenship and Immigration Services, both within DHS.  The Bureau of Citizenship and Immigration Services subsequently changed its name to USCIS.  Name Change From the Bureau of Citizenship and Immigration Servs. to U.S. Citizenship and Immigration Servs., 69 Fed. Reg. 60,938, 60,938 (Oct. 13, 2004).

the passage of the Immigration Act of 1990, was one of the largest users of the H-1B classification" and (in 1998) did "not fully reflect current legitimate business practices" involving "bona fide businesses which provide contract workers to certain industries under the H-1B classification." *Id*.

44.    Despite admittedly being outdated over 20 years ago, the Itineraries memo cited this regulation for the requirement of an "[i]tinerary as evidence to demonstrate the beneficiary will be employed in a specialty occupation" with "specific and non-speculative qualifying assignments in a specialty occupation . . . for the entire time requested on the petition." Itineraries memo at 6.

45.    According to the memo, petitioners cannot rely solely on their own statements. *Id*. at 4. Rather, they must submit "additional corroborating evidence" which "may" include contracts, work orders, or a "combination" of other evidence such as "[a] letter signed by an authorized official of each ultimate end-client company where the beneficiary will actually work" providing information "such as a detailed description of the specialized duties the beneficiary will perform, the qualifications required to perform those duties, the duration of the job . . . ." *Id*. at 4-5.

46.    As far as final adjudication is concerned, the Itineraries memo confirms that "[w]hile an H-1B petition may be approved for up to three years, USCIS will, in its discretion, generally limit the approval period to the length of time demonstrated that the beneficiary will be placed in non-speculative work and that the petitioner will maintain the requisite employer-employee relationship . . . ." *Id*. at 7.

47.    Regardless of the matter at issue and apart from these memoranda, both binding precedent and the Adjudicator's Field Manual require Defendant USCIS to apply the "preponderance of the evidence" standard of proof in evaluating evidence to determine whether the petitioner has met its burden. *See In re Chawathe*, 25 I. & N. Dec. 369, 376 (USCIS Admin.

Appeals Office 2010); *see also* 8 C.F.R. § 103.3(c) (stating that "Service precedent decisions" like *Chawathe* "are binding on all Service employees" until they are modified or overruled); AFM Ch. 11.1(c) (Ex. E). According to the AFM, "even if the director has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to believe that the claim is 'probably true' or 'more likely than not,' the applicant or petitioner has satisfied the standard of proof." AFM, Ch. 11.1(c).

**Department of Labor's Exclusive Role in Regulating
"Speculative" H-1B Work**

48.     The Itineraries memo's requirement to show "specific and non-speculative qualifying assignments" years in advance stands in apparent tension with the role of the U.S. Department of Labor ("DOL").

49.     Defendant USCIS administers the H-1B program in partnership with the DOL pursuant to a carefully-structured regime Congress designed.

50.     Under that regime, USCIS' adjudicative responsibility with respect to H-1B visa petitions is twofold: it "shall determine if the [petition] involves a specialty occupation" and "shall also determine whether the particular alien for whom H-1B classification is sought qualifies to perform services in the specialty occupation." 8 C.F.R. § 214.2(h)(4)(i)(B)(2).

51.     DOL's role, on the other hand, relates to protection of the H-1B worker and the U.S. labor market. This is done by requiring employers to obtain a certified Labor Condition Application ("LCA") from DOL before the H-1B is filed, and which must be included with the H-1B petition. 8 U.S.C. § 1182(n); 8 C.F.R. §214.2(h)(4)(i)(B)(1) & (h)(4)(iii)(B)(1). The LCA confirms the H-1B employer's agreement to certain attestations related to wages and working conditions. 8 U.S.C. § 1182(n).

12

52.     By completing and signing the LCA, the employer becomes subject to DOL's jurisdiction and enforcement authority for the duration of the worker's H-1B visa status plus one year afterward.  *Id*. § 1182(n)(2); 20 C.F.R. § 655.700 *et seq*.  DOL has broad powers to protect U.S. workers' wages and working conditions and to enforce the terms of the LCA.

53.     Critically for the purposes of this action, Congress established a framework to address the problem of H-1B employers who lack sufficient work for their H-1B employees.  *See* 8 U.S.C. § 1182(n)(2)(C)(vii).

54.     When an employer places an employee in "nonproductive status," the employer must continue to pay the H-1B employee the wage set forth in the LCA or risk being assessed back pay and other penalties.  *Id*. § 1182(n)(2)(D); 20 C.F.R. § 655.731(c)(7)(i).

55.     Essentially, H-1B employers who find they lack sufficient work for an H-1B employee to perform have two choices: (a) terminate the employee and pay for his or her return home or (b) continue to pay the wage required on the LCA until there is once again work to perform.  8 U.S.C. § 1182(n)(2)(C)(vii).

56.     Accordingly, Congress clearly contemplated the problem of "speculative assignments" for H-1B workers, but delegated redress of that problem to DOL and not USCIS. Congress chose *not* to require employers to demonstrate that they have sufficient specialty occupation work for an intended beneficiary at the time of filing the H-1B petition (which would require a crystal ball in most instances), and Defendant USCIS does not even pretend this is required evidence even today.  *See* Ex. G (USCIS website listing "Checklist of Required Initial Evidence" for H-1B petitions).

<u>Staffing Company Use of the H-1B Program</u>

57.     Staffing companies like Populus are in the business of supplying professional labor

for temporary assignments of different lengths which require specialty labor.

58.     The agency has for decades acknowledged these as "legitimate business practices" that are permissible under the H-1B program.  Petitioning Requirements for the H Nonimmigrant Classification, 63 Fed. Reg. 30,419, 30,419 (June 4, 1998).

59.     While the projects themselves may be temporary, the need for specialty labor can be constant across various clients.  So while the staffing company may be able to document the specific project an employee will be working on at the time the H-1B petition is filed, the agency itself acknowledged that "[c]learly an H-1B petitioner in this situation could not know of all particular contract jobs at the time it first files the H-1B petition with the Service."  *Id.*

60.     Instead, the mechanism for accommodating changes in projects is the filing of a petition to amend the employee's H-1B status.  *See* Policy Memorandum PM-602-0120, U.S. Citizenship & Immigration Servs., *USCIS Final Guidance on When to File an Amended or New H-1B Petition after* Matter of Simeio Solutions, LLC (July 21, 2015) (Ex. H).

61.     However, that presupposes that an employee has approved H-1B status to begin with.

62.     By operation of the Itineraries memo, initial H-1B petitions like Populus' are now being denied with employees never being counted against the H-1B cap.  *See* 8 U.S.C. § 1184(g)(7).  Without that cap number and thus unable to hold H-1B status, these employees cannot be transferred to other projects and face being without lawful immigration status after their OPT period expires.

### Factual Allegations

63.     Populus is a privately-held, Minority Business Enterprise headquartered in Michigan that provides high-end staffing services and solutions to businesses nationwide.

14

64.     Populus was founded in 2002 and has since grown to employ over 6,800 individuals across nine offices nationwide.

65.     Record evidence shows that the Populus employees are all U.S. master's graduates with degrees in specific IT and Engineering fields.  They were working for Populus under OPT which either has already expired or, in the case of Mr. Sharma, is set to expire on January 9, 2020.

66.     Seeking to continue employing the Populus employees beyond expiration of their OPT, Populus filed three separate, cap-subject H-1B petitions on their behalf for specialized IT and Engineering positions.

67.     In the position of .Net Developer, Mr. Sharma would use his U.S. Master's degree in IT and Management to design and develop a mobile application that one of the world's largest healthcare accrediting organizations will use to assess the safety and compliance of particular facilities.  In the position of Java Developer, Ms. Kondeti would use her U.S. Master's degree in Electrical Engineering to develop supply-chain software at a top-ten global logistics company.  And in the position of Manufacturing Engineer, Ms. Siriguppi would use her U.S. Master's degree in Mechanical Engineering to analyze and improve production and design processes at a major medical-device provider.

68.     The petitions were selected in the Fiscal Year 2019 H-1B lottery and receipted by Defendant USCIS' CSC on April 12, 2018.

69.     Each petition contained the required LCA and the employee's immigration and academic credentials.  The petitions each also included a detailed letter from Dorian Cast, Populus' Immigration Operations Supervisor, which (a) explained the nature of the contractual arrangements placing each employee on the specific project to which he or she had been assigned; (b) confirmed the employer-employee relationship between Populus and the Populus employees;

(c) explained in detail Populus' right to control the Populus employees' employment; (d) provided a detailed discussion of the job duties and why they require a specialty body of academic knowledge; and (e) confirmed each employee's academic qualifications for the position.

70.     Subsequent to the filing, Defendant USCIS' CSC issued a Request for Evidence ("RFE") on each case.  Relevant to this matter, each RFE requested additional proof that Populus maintained an "employer-employee" relationship with the sponsored employee and that the employee would have "specific and non-speculative qualifying assignments in a specialty occupation" through the September 2021 end dates requested in each petition.

71.     Populus timely submitted its response to each RFE to the CSC.  The responses contained, among other things, a detailed letter from each end client confirming in granular detail (a) the contractual relationships with Populus; (b) the specific duties the Populus employees would perform on site; (c) the academic requirements to perform these duties; and (d) that Populus would solely have an employer-employee relationship with the Populus employees throughout the length of these extensive and long-term projects.  The RFE responses also included signed employment agreements spelling out the employment relationships with Populus and affirming Populus' sole right to control the Populus employees' employment.

72.     CSC denied the I-129 H-1B petitions between November 15 and 20, 2018.  (Ex. B.)  Each denial was premised on two grounds and contained nearly identical language.

73.     First, CSC concluded in each case that Populus had failed to show that it had the required "'employer-employee' relationship" with each of the Populus employees because Populus purportedly did not "establish whether [it had] the right to control the . . . employment" of the Populus employees "at the third-party end client."  (Ex. B (Sharma denial at 3-4; Kondeti denial at 3; Siriguppi denial at 3).)

16

Case 1:19-cv-00027-KBJ   Document 15   Filed 09/04/19   Page 17 of 34


74. Second, CSC concluded in each case that Populus had failed to show that that the Populus employees would be working in a "specialty occupation" for the period requested in the H-1B petition, finding that the "the evidence does not establish the work to be completed; that the duties to be performed are those of a computer related position;[5] and that [each] beneficiary will perform services in a specialty occupation through the duration of the requested H-1B validity period," going so far to claim that Populus submitted nothing more than its own "uncorroborated statements" about the work the Populus employees would be performing. (Ex. B (Sharma denial at 6; Kondeti denial at 6; Siriguppi denial at 6).)

75. The denial language mirrored that of the Itineraries memo and confirms that this new legislative rule was used to deny these petitions.

76. Populus challenged all three denials by filing suit against Defendants in this Court on January 7, 2019.

77. After suit was filed, Defendant USCIS *sua sponte* reopened the three cases and issued new RFEs on March 15, 2019. Litigation was subsequently stayed.

78. Each new RFE essentially requested the same evidence that had already been provided in response to the first set of RFEs: asking again for more proof of the "employer-employee" relationship with each employee, and that they would be performing "specific, non-speculative work."

79. Populus again timely submitted the RFE responses to CSC.

80. The responses each emphasized the preponderance of record evidence which should have resulted in approvals instead of denials in November 2018: the ample proof of an

---

[5] The Siriguppi denial contained the same reference to a "computer related position" even though the record made clear she would be working in an Engineering position. This further demonstrates the disconnect between USCIS' boilerplate denial decision and the actual evidence.

17

3699995

"employer-employee" relationship in the form of Populus pay stubs, employment agreements with specific provisions showing Populus' right to control, and end-client confirmations and the ample proof of "specific, non-speculative work" in the form of detailed end-client letters confirming specific projects the Populus employees would be using their specialty education to perform.

81.     The responses also went to great pains to highlight the policy flaws endemic to the Itineraries memo, which could have been avoided had Defendant USCIS undertaken proper notice and comment.

82.     Specifically, Populus provided a letter with extensive detail as to the staffing industry's business model, how projects materialize and are assigned, and the types of documents involved.  (*See, e.g.*, Ex. I (letter submitted in response to Sharma RFE).)

83.     Populus also submitted a letter from the American Staffing Association—a trade association representing approximately 20,000 staffing companies nationwide—providing key insight into staffing-industry practices, pointing out essential flaws with the Itineraries memo, and emphasizing how end-client letters like those Populus submitted are considered the "best evidence" that employment is not "speculative." (Ex. J.)

84.     Populus also provided extensive legal argument addressing Defendant USCIS' misplaced and overreaching concerns over "speculative employment."

85.     First, in response to Defendant USCIS' selective quotation of a 21-year-old Federal Register section, Populus provided the full section which stated that these concerns are satisfied by showing "employment in a specialty occupation available for the alien at the time the petition is initially filed"—which Populus had and which Defendant USCIS admittedly verified—and went further by providing additional evidence as to the magnitude of its operations and contracts with clients showing extensive specialty work available beyond the single projects to which each

18

employee was assigned.

86.     Second, Populus provided a copy of the American Competitiveness and Workforce Improvement Act ("ACWIA") and explained how this legislation from later in 1998 made "speculative employment" solely a concern of DOL.

87.     By the time the second set of RFEs was issued, almost a year had passed since the initial H-1B filings.

88.     If the H-1B petitions had been properly approved in November 2018, each of the Populus employees would have been counted against the H-1B cap and Populus could transfer them to other specialty projects through the filing of amended H-1B petitions.

89.     Instead, the wrongful denials left Populus without a mechanism to transfer the Populus employees to other projects even though the company continues to maintain a desire to keep them employed and provided evidence in the RFE response of work available through contracts it has with some of the largest clients in the industry.[6]

90.     Rather than approve the H-1B petitions and allow Populus to file amended petitions to place the Populus employees on other projects, CSC denied the I-129 H-1B petitions again in decisions dated July 12, 2019.  (Ex. C.)  The denials were premised the identical grounds as the initial denials: that Populus failed to prove an "employer-employee relationship" or that the Populus employees would be working in a "specialty occupation" for the period requested in the H-1B petition.

91.     The denials each contained nearly identical language and reasoning.

---

[6] Understandably, having been deprived of H-1B cap numbers as a result of the wrongful November 2018 denials, the Populus employees left the company to seek other options with their OPT and H-1B sponsorship for the most recent fiscal year.  The record shows that Populus remains willing and able to re-hire them once the H-1B petitions are approved.

92.     Alarmingly, each decision was also replete with glaring factual misstatements and analytical errors.

93.     With regard to the "employer-employee" relationship, Defendant again found that the copious evidence provided still failed to show that Populus had an "adequate level of control over the beneficiary" in each case.  (*See* Ex. C (Sharma denial at 4; Siriguppi denial at 4; Kondeti denial at 4).)

94.     The denials nonsensically referred to the printout of the Federal Register section and ACWIA as having been submitted as proof of Populus' "right to control the beneficiary," (*see id*.,) when they were clearly submitted not as factual materials but as <u>legal</u> materials to show Defendant USCIS' overstepping into the realm of "speculative employment"—an issue not related to the "employer-employer" issue at all.

95.     Defendant USCIS also belittled the letter from the American Staffing Association ("ASA") as a "generic letter from a staffing agency," (*see id*.), and similarly missed the point of the letter which was to point out the harm in the agency's failure to undertake a proper rulemaking prior to unleashing the Itineraries memo—again, something that had nothing to do with the "employer-employee" issue.

96.     With regard to the "specialty occupation" work, Defendant USCIS continued to reject the specific and detailed confirmations from each end-client that ASA described as the "best evidence" of specific work in favor of the irrelevant, cumulative, or nonexistent documents required in the Itineraries memo.  (*See id*. (Sharma denial at 7-8; Siriguppi denial at 7-8; Kondeti denial at 7-8).)  This was even despite Defendant USCIS actually verifying with the job site that the employees had undertaken the described employment.  (*See, e.g., id*. (Sharma denial at 8; Siriguppi denial at 8).)

97.     The denial language again mirrored that of the Itineraries memo and confirms that this new legislative rule was used to deny these petitions.

98.     Once more, Defendant USCIS mischaracterized the Federal Register section and ACWIA as having been submitted as factual materials instead of legal materials pointing out how the agency's request for additional information on this point was improper in the first place.

99.     The denials did not respond to this legal argument.

100.    And Defendant USCIS missed the entire point of the additional supplier/vendor agreements Populus submitted in response to the RFE, which were to show the magnitude of additional work available to each beneficiary beyond the discrete projects at issue and not to provide a "detailed description of the actual services" in those projects, which no supplier/vendor agreement would ever contain.  (*See id*.; *see also* Ex. J (ASA letter).)

101.    Defendant USCIS did not apply the "preponderance of the evidence" standard to Populus' H-1B petitions.

102.    Defendant USCIS applied the Itineraries memo in denying these H-1B petitions.

103.    As a result of Defendants' continued denial of these H-1B nonimmigrant visa petitions, Populus will remain without the services of three highly-skilled employees.

104.    As a result of Defendants' continued enforcement of the Itineraries memo as an unlawful legislative rule, Populus and other companies in the staffing industry risk further denials on similar facts and considerable harm to a business model which has long been accepted as "legitimate" under the H-1B program.

105.    Indeed, Populus is experiencing continued harm as Defendants continue to apply the unlawful Itineraries memo in denying new H-1B petitions the company filed this year.  *See, e.g.*, *In re Populus Group,* LLC, WAC1917450798 (July 11, 2019) (Ex. I).

3699995

106.    These and other denials on similar facts jeopardize the future of the company and its over 6,800 U.S. employees.

**Exhaustion**

107.    Defendants' July 12, 2019, denials of Populus' three H-1B nonimmigrant visa petitions constitute final agency actions under the APA, 5 U.S.C. § 701, *et seq*. Neither the INA nor DHS regulations at 8 C.F.R. § 103.3(a), require an administrative appeal of the denials. Accordingly, Populus has no administrative remedies to exhaust.

108.    Under 5 U.S.C. §§ 702 and 704, Populus has suffered a "legal wrong" and has been "adversely affected or aggrieved" by agency action for which there is no adequate remedy at law.

**CAUSE OF ACTION**

**COUNT I**

**Administrative Procedure Act Violation (5 U.S.C. § 706)—Sharma petition**

109.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

110.    The Administrative Procedure Act ("APA") provides in material part that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall—
> . . .
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>> . . .
>> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>> (D) without observance of procedure required by law.

5 U.S.C. § 706.

111.   Defendants' denial of the H-1B nonimmigrant visa petition Plaintiff filed on behalf of Mr. Sharma (WAC1814452032) constitutes a final agency action that is arbitrary and capricious, an abuse of discretion, and not in accordance with the law.

112.   Plaintiff Populus submitted evidence demonstrating that it would have an "employer-employee" relationship with Mr. Sharma and that he would be engaged in "specialty occupation" work for Populus throughout the requested H-1B petition duration.

113.   Defendants' conclusion that Plaintiff had not shown it would have an "employer-employee relationship" with Mr. Sharma is arbitrary and capricious, an abuse of discretion, and not in accordance with the law, including because they applied heightened and improper legal standards; failed to consider all record evidence; and reached factual conclusions unsupported by any evidence in the record.

114.   Defendants' conclusion that Plaintiff had not shown that Mr. Sharma would be working in a "specialty occupation" for the period requested in the H-1B petition is arbitrary and capricious, an abuse of discretion, and not in accordance with the law, including because they applied heightened and improper legal standards; failed to consider all record evidence; and reached factual conclusions unsupported by any evidence in the record.

115.   Defendants' denial of the H-1B nonimmigrant visa petition Plaintiff filed on behalf of Mr. Sharma (WAC1814452032) also constitutes a final agency action that was made without observance of procedure required by law.

116.   Defendants were required by law to apply the "preponderance of the evidence" standard of proof in adjudicating this petition.

117.   Defendants failed to observe this procedure required by law, including by improperly insisting on specific pieces of evidence to prove the "employer-employee relationship"

with Mr. Sharma and the "specialty occupation" work he would be performing, and by dismissing and/or diminishing on-point and uncontradicted record evidence such as the signed letter from the end client that should have been found sufficient to carry Plaintiff's burden.

118.    Defendants also failed to observe a procedure required by law when they relied on the Itineraries memo—which did not go through the APA regulatory rulemaking process—to require specific pieces of evidence from Populus that were not required by regulation, instead of following the binding "preponderance of the evidence" standard requiring Defendants to evaluate the full body of evidence presented.  The use of a non-regulatory standard to require non-regulatory evidence in contravention of a binding regulatory standard is clear legal error.

119.    Defendants' denial of the H-1B nonimmigrant visa petition Plaintiff filed on behalf of Mr. Sharma (WAC1814452032) also constitutes a final agency action that was made in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

120.    Defendants illegally exceeded their authority in denying this H-1B petition, in part, on the basis of Plaintiff's purported failure to prove that Mr. Sharma would be working in a "specialty occupation" for the period requested in the H-1B petition.  Congress made clear that the issue of "speculative employment" is solely a concern of DOL and is far beyond any of the issues Defendants are tasked with adjudicating.

121.    As a result of Defendants' unlawful decision, Populus has suffered and will continue to suffer injury from the denial of its H-1B petition by depriving the company of the valuable services of an employee and compromising its ability to fulfill its contractual obligations.

## COUNT II

### Administrative Procedure Act Violation (5 U.S.C. § 706)—Kondeti petition

122.    Plaintiff incorporates the allegations of Paragraphs 1-108 as if fully set forth herein.

123.    The APA provides in material part that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
> . . .
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>> . . .
>> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>> (D) without observance of procedure required by law.

5 U.S.C. § 706.

124.    Defendants' denial of the H-1B nonimmigrant visa petition Plaintiff filed on behalf of Ms. Kondeti (WAC1814650517) constitutes a final agency action that is arbitrary and capricious, an abuse of discretion, and not in accordance with the law.

125.    Plaintiff Populus submitted evidence demonstrating that it would have an "employer-employee" relationship with Ms. Kondeti and that she would be engaged in "specialty occupation" work for Populus throughout the requested H-1B petition duration.

126.    Defendants' conclusion that Plaintiff had not shown it would have an "employer-employee relationship" with Ms. Kondeti is arbitrary and capricious, an abuse of discretion, and not in accordance with the law, including because they applied heightened and improper legal standards; failed to consider all record evidence; and reached factual conclusions unsupported by any evidence in the record.

127.    Defendants' conclusion that Plaintiff had not shown that Ms. Kondeti would be working in a "specialty occupation" for the period requested in the H-1B petition is arbitrary and capricious, an abuse of discretion, and not in accordance with the law, including because they

applied heightened and improper legal standards; failed to consider all record evidence; and reached factual conclusions unsupported by any evidence in the record.

128.    Defendants' denial of the H-1B nonimmigrant visa petition Plaintiff filed on behalf of Ms. Kondeti (WAC1814650517) also constitutes a final agency action that was made without observance of procedure required by law.

129.    Defendants were required by law to apply the "preponderance of the evidence" standard of proof in adjudicating this petition.

130.    Defendants failed to observe this procedure required by law, including by improperly insisting on specific pieces of evidence to prove the "employer-employee relationship" with Ms. Kondeti and the "specialty occupation" work she would be performing, and by dismissing and/or diminishing on-point and uncontradicted record evidence such as the signed letter from the end client that should have been found sufficient to carry Plaintiff's burden.

131.    Defendants also failed to observe a procedure required by law when they relied on the Itineraries memo—which did not go through the APA regulatory rulemaking process—to require specific pieces of evidence from Populus that were not required by regulation instead of following the binding "preponderance of the evidence" standard requiring Defendants to evaluate the full body of evidence presented.  The use of a non-regulatory standard to require non-regulatory evidence in contravention of a binding regulatory standard is clear legal error.

132.    Defendants' denial of the H-1B nonimmigrant visa petition Plaintiff filed on behalf of Ms. Kondeti (WAC1814650517) also constitutes a final agency action that was made in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

133.    Defendants illegally exceeded their authority in denying this H-1B petition, in part, on the basis of Plaintiff's purported failure to prove that Ms. Kondeti would be working in a

3699995

"specialty occupation" for the period requested in the H-1B petition.  Congress made clear that the issue of "speculative employment" is solely a concern of DOL and is far beyond any of the issues Defendants are tasked with adjudicating.

134.     As a result of Defendants' unlawful decision, Populus has suffered and will continue to suffer injury from the denial of its H-1B petition by depriving the company of the valuable services of an employee and compromising its ability to fulfill its contractual obligations.

## COUNT III

### Administrative Procedure Act Violation (5 U.S.C. § 706)—Siriguppi petition

135.     Plaintiff incorporates the allegations of Paragraphs 1-108 as if fully set forth herein.

136.     The APA provides in material part that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall—
> . . .
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> > . . .
> > (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> > (D) without observance of procedure required by law.

5 U.S.C. § 706.

137.     Defendants' denial of the H-1B nonimmigrant visa petition Plaintiff filed on behalf of Ms. Siriguppi (WAC1814953045) constitutes a final agency action that is arbitrary and capricious, an abuse of discretion, and not in accordance with the law.

138.     Plaintiff Populus submitted evidence demonstrating that it would have an

"employer-employee" relationship with Ms. Siriguppi and that she would be engaged in "specialty occupation" work for Populus throughout the requested H-1B petition duration.

139.    Defendants' conclusion that Plaintiff had not shown it would have an "employer-employee relationship" with Ms. Siriguppi is arbitrary and capricious, an abuse of discretion, and not in accordance with the law, including because they applied heightened and improper legal standards; failed to consider all record evidence; and reached factual conclusions unsupported by any evidence in the record.

140.    Defendants' conclusion that Plaintiff had not shown that Ms. Siriguppi would be working in a "specialty occupation" for the period requested in the H-1B petition is arbitrary and capricious, an abuse of discretion, and not in accordance with the law, including because they applied heightened and improper legal standards; failed to consider all record evidence; and reached factual conclusions unsupported by any evidence in the record.

141.    Defendants' denial of the H-1B nonimmigrant visa petition Plaintiff filed on behalf of Ms. Siriguppi (WAC1814953045) also constitutes a final agency action that was made without observance of procedure required by law.

142.    Defendants were required by law to apply the "preponderance of the evidence" standard of proof in adjudicating this petition.

143.    Defendants failed to observe this procedure required by law, including by improperly insisting on specific pieces of evidence to prove the "employer-employee relationship" with Ms. Siriguppi and the "specialty occupation" work she would be performing, and by dismissing and/or diminishing on-point and uncontradicted record evidence such as the signed letter from the end client that should have been found sufficient to carry Plaintiff's burden.

144.    Defendants also failed to observe a procedure required by law when they relied on

28

3699995

the Itineraries memo—which did not go through the APA regulatory rulemaking process—to require specific pieces of evidence from Populus that were not required by regulation instead of following the binding "preponderance of the evidence" standard requiring Defendants to evaluate the full body of evidence presented.  The use of a non-regulatory standard to require non-regulatory evidence in contravention of a binding regulatory standard is clear legal error.

145.    Defendants' denial of the H-1B nonimmigrant visa petition Plaintiff filed on behalf of Ms. Siriguppi (WAC1814953045) also constitutes a final agency action that was made in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

146.    Defendants illegally exceeded their authority in denying this H-1B petition, in part, on the basis of Plaintiff's purported failure to prove that Ms. Siriguppi would be working in a "specialty occupation" for the period requested in the H-1B petition.  Congress made clear that the issue of "speculative employment" is solely a concern of DOL and is far beyond any of the issues Defendants are tasked with adjudicating.

147.    As a result of Defendants' unlawful decision, Populus has suffered and will continue to suffer injury from the denial of its H-1B petition by depriving the company of the valuable services of an employee and compromising its ability to fulfill its contractual obligations.

COUNT IV

**Administrative Procedure Act Violation (5 U.S.C. § 553)—Improper Rulemaking**

148.    Plaintiff incorporates the allegations of Paragraphs 1-108 as if fully set forth herein.

149.    The APA requires that agencies provide public notice of, and opportunity to comment on, legislative rules before their promulgation. *See* 5 U.S.C. §§ 553(b), (c). The APA also requires that any substantive rule must be published at least 30 days prior to its effective date. *See id.* § 553(d).

29

3699995

150.    Although styled as a "Policy Memorandum," the February 22, 2018, Itineraries memo is a legislative rule within the meaning of the APA.

151.    Defendants did not comply with the APA's procedural requirements when it made the Itineraries memo immediately effective upon publication.

152.    Defendants' failure to provide for notice and comment violates 5 U.S.C. § 553(b) and (c).

153.    Defendants' failure to publish the Itineraries memo at least 30 days before its effective date violates 5 U.S.C. § 553(d).

## COUNT V

**Administrative Procedure Act Violation (5 U.S.C. § 706)—Arbitrary and Capricious**

154.    Plaintiff incorporates the allegations of Paragraphs 1-108 as if fully set forth herein.

155.    The APA provides in material part that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall—
> . . .
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . .

5 U.S.C. § 706(2)(A).

156.    The Itineraries memo represents an agency action which is arbitrary and capricious.

157.    By adopting this legislative rule without proper notice and comment, Defendant USCIS "entirely failed to consider an important aspect of the problem" because it never received "relevant data" to examine regarding staffing-industry practices under the H-1B program.  *See Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

158.     As a result of this and other errors in consideration, the final Itineraries memo represents flawed policy that was not the byproduct of "reasoned decisionmaking."  *See Judulang v. Holder*, 565 U.S. 42, 52-53 (2011).

159.     Notably, the Itineraries memo requires documentation of staffing companies that is nonsensical, nonexistent, or cumulative of or inferior to other best evidence.  It also arbitrarily subjects staffing-company H-1B petitioners to standards not applicable to any other employer, and capriciously exceeds agency authority by intruding on DOL's jurisdiction over "speculative employment."

160.     Populus has suffered and will continue to suffer injury from being held to the requirements of the arbitrary and capricious—and therefore unlawful—Itineraries memo, which jeopardizes Populus' future ability to use the H-1B program and places the company's entire business model in peril.

## COUNT VI

### Administrative Procedure Act Violation (5 U.S.C. § 706)—*Ultra Vires*

161.     Plaintiff incorporates the allegations of Paragraphs 1-108 as if fully set forth herein.

162.     The APA provides in material part that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall—
> . . .
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
> > . . .
> > (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . .

5 U.S.C. § 706(2)(C).

163.     The Itineraries memo seeks to expand Defendants' authority in excess of their

31

statutory jurisdiction.

164.     In ACWIA, Congress tasked DOL—not Defendants—with tacking the problem of "speculative employment," i.e., H-1B employers who lack sufficient work for their H-1B employees. *See* 8 U.S.C. § 1182(n)(2)(C)(vii).

165.     When such an employer places an employee in "nonproductive status," the employer must continue to pay the wage set forth on the Labor Condition Application or risk being assessed back pay and other penalties by DOL. *Id*. § 1182(n)(2)(D); 20 C.F.R. § 655.371(c)(7)(i).

166.     Accordingly, Congress chose <u>not</u> to require employers on the front end to demonstrate that they have "sufficient specialty occupation work" for years to come (as the Itineraries memo requires), instead deciding to punish these employers on the back end with potentially big hits to their wallets.

167.     By enforcing the Itineraries memo, Defendants are illegally encroaching on DOL's statutory role and frustrating this enforcement framework envisioned by Congress.

## COUNT VII

### Declaratory Judgment (28 U.S.C. § 2201)

168.     Plaintiff incorporates the allegations of Paragraphs 1-108 as if fully set forth herein.

169.     Pursuant to 28 U.S.C. § 2201, the Court may declare the rights of the parties and such declaration shall have the force and effect of a final judgment or decree.

170.     Defendants' role in the H-1B program is to "determine if the [occupation listed on the Labor Condition Application] involves a specialty occupation" and to "also determine whether the particular alien for whom H-1B classification is sought qualifies to perform services in the specialty occupation." 8 C.F.R. § 214.2(h)(4)(i)(B)(2).

171.     This role does not extend to examining whether or not proposed employment is

32

"speculative" or whether work available is "sufficient," which are solely concerns of the U.S. Department of Labor.

172.     Because Defendants have exceeded and continue to exceed their role, issuance of a declaratory judgment that Defendants have no jurisdiction over the issue of "speculative employment" and whether work available is "sufficient" is therefore warranted.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief:

1.     Vacate Defendants' denial of the H-1B nonimmigrant visa petitions Populus filed on behalf of Jay Sharma (WAC1814452032), Pravallika Kondeti (WAC1814650517), and Mounika Siriguppi (WAC1814953045);

2.     Order Defendants to promptly approve the H-1B visa petitions for consular processing;

3.     Order Defendants to adjudicate subsequent H-1B nonimmigrant petitions filed by Populus in accordance with the law;

4.     Invalidate Policy Memorandum PM-602-0157, U.S. Citizenship & Immigration Servs., *Contracts and Itineraries Requirements for H-1B Petitions Involving Third-Party Worksites* (Feb. 22, 2018), and enjoin its enforcement;

5.     Declare that Defendants must confine themselves to their role under 8 C.F.R. § 214.2(h)(4)(i)(B)(2) when adjudicating H-1B petitions filed by Populus and other employers, and that Defendants have no jurisdiction over or role in examining or determining whether or not proposed employment is "speculative" or whether work available is "sufficient."

6.    Award Populus its attorneys' fees and costs, including but not limited to those recoverable under the Equal Access to Justice Act; and

7.    Grant any other relief that this Court may deem just and proper.

Dated:  September 4, 2019.          Respectfully submitted,

_____

David E. Gluckman (District Court Bar #VA041)

MCCANDLISH HOLTON, PC
1111 East Main St., Ste. 2100
Richmond, VA 23219
Telephone: (804) 775-3826
Fax: (804) 775-7226
dgluckman@lawmh.com

*Attorney for Plaintiff*
*Populus Group, LLC*

34